In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-1372

NEW WEST, L.P., and NEW BLUFF, L.P.,

*Plaintiffs-Appellants*,

*v.*

MARCIA L. FUDGE, Secretary of Housing and Urban Development,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19 C 4211 — **Robert W. Gettleman**, *Judge*.

———————————

SUBMITTED SEPTEMBER 14, 2021[*]—DECIDED SEPTEMBER 20, 2021

———————————

Before SYKES, *Chief Judge*, and EASTERBROOK and BRENNAN, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. After the City of Joliet, Illinois, condemned a housing development managed by New West and New Bluff (collectively New West), and paid $15 million for the properties, the parties disagreed about the appropriate

———————————

[*] The court granted the parties' joint motion to waive oral argument.

disposition of a fund worth roughly $2.7 million. This fund, established under contracts between New West and the Department of Housing and Urban Development—whose rent subsidies for low-income tenants provided almost all of the money for operating the housing development—had a stated goal of ensuring that money would be available for maintenance and repair of the properties if New West defaulted on its obligations to tenants or the Department. New West maintains that, because it is no longer responsible for maintenance or repair, it should receive the money. But the Department has refused New West's demands for payment and is holding the money for the benefit of Joliet, which succeeded New West as the buildings' proprietor.

A dispute about the disposition of the reserve fund arose during the condemnation proceeding, but we held in *Joliet v. New West, L.P.*, 921 F.3d 693 (7th Cir. 2019) (*New West V*), that the issue calls for a separate suit with the Department as defendant. This suit is the result. The district judge granted the Department's motion for summary judgment. 2021 U.S. Dist. LEXIS 21393 (N.D. Ill. Feb. 4, 2021).

*New West V* reaches two conclusions pertinent to the current suit: first, that 12 U.S.C. §1702 waives the Department's sovereign immunity to a claim based on a contract; second, that only a contract, rather than a statute or regulation, offers New West any prospect of success. The parties take these conclusions as given, so we need to resolve a dispute about the meaning of the contracts between New West and the Department.

But New West does not rely on contractual *language*. Instead it says that the parties' *goal* of providing security for repairs and maintenance implies that the money must belong to

it once the project's ownership passes to someone else. This will not do. Perhaps, because the money came from the federal Treasury through the payment of above-market rents, the money should revert to the Treasury. Or perhaps, because the money is designed to provide security if the project's owner fails to meet its responsibilities, the fund should pass, with the buildings, to the project's new owner. Or perhaps, because a goal of the fund is to protect tenants' interests, the money should be distributed to the tenants or used to reduce their rents. A general objective does not resolve which of these possibilities the contracting parties elected. That requires a decision encoded in agreed language, which these contracts lack. New West is the plaintiff and bears the risk of non-persuasion. Do-what's-best-all-things-considered is a poor substitute for concrete language in a contract case.

Now it isn't quite right to say that New West bypasses *all* contractual language. Security agreements gave the Department a lien on the fund's contents, and these are the only contracts on which New West relies. Once the condemnation was complete, and New West no longer owned the project, the Department released its lien by proper documents under the Uniform Commercial Code. According to New West, this necessarily shows that it now owns the fund outright. But that's not so. The end of the lien means that the Department no longer has a security interest. But who *owns* the fund? The absence of a security interest does not answer the question—and, as we explained above, the possibilities include New West, the City of Joliet, the Treasury, and the tenants. This sends us back to the contracts, which do not address the subject. New West gave the Department security in whatever property interest New West possessed in the fund, but the act of doing so does not establish what New West's interest was.

New West tells us that it treated additions to the reserve fund as taxable income, from which it concludes that it must own the money. It does not say, however, that anything in its contracts with the Department required it to treat the fund that way. It would be circular to permit New West's tax reporting to establish its ownership. Perhaps all this shows is that New West has reported too much income and needs to file amended tax returns.

The parties' briefs discuss ambiguous language in a legal opinion issued in 2001 by the agency's Associate General Counsel for Insured Housing, an internal manual that the agency uses to guide operations, and a district court's opinion. See *Kukui Gardens Corp. v. Holco Capital Group, Inc.*, 2009 U.S. Dist. Lexis 96253 (D. Haw. Oct. 15, 2009). None of these addresses the central question of our case: What does the language in contracts between New West and the Department establish about who owns the reserve fund after New West no longer operates the housing project? It is accordingly unnecessary to discuss them further—and a decision by some other district judge in some other dispute to which the Department was not a party certainly gets no more weight than the decision of the district judge in this very case.

Finally, New West contends that the Department's control of the reserve fund converted the money, in violation of tort doctrines. As the district court observed, a suit seeking damages for conversion requires an administrative claim under the Federal Tort Claims Act, see 28 U.S.C. §2675(a), and New West concedes that it did not present such a claim to the Department. A remedy under the FTCA is exclusive when the statute applies, see 28 U.S.C. §2679(a), so New West cannot

use 12 U.S.C. §1702 as a waiver of sovereign immunity to pursue a tort claim.

Not that this matters. To have a claim for tortious conversion of property, New West must first establish that the money in the reserve fund is its property. In other words, to win a tort claim New West must first win its contract claim—and if it had been able to prevail on the contract claim (which it didn't), New West would not have needed a conversion claim as a fallback.

AFFIRMED